UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

ANTONE REYNOLDS #222375,

                Plaintiff,                Case No. 2:09-cv-144

v.                                          Honorable Robert Holmes Bell

UNKNOWN WARZAK, et al.,

                Defendants.
_____/

## OPINION

Plaintiff Antone Reynolds #222375, a Michigan state prisoner who was confined at the Alger Maximum Correctional Facility (LMF) during the pertinent time period, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). The court ordered that Plaintiff's complaint be served on Defendants on October 8, 2009 (docket #3). Defendants subsequently moved to dismiss the complaint for misjoinder of claims and parties. Plaintiff conceded that his complaint was improper and moved to voluntarily dismiss all named Defendants except for Defendants Warden David Bergh, Assistant Resident Unit Supervisor Lynne Phillipson, Sergeant Patricia Belfry, Resident Unit Officer Steven Sharrett, Resident Unit Officer Todd Dejong, Sergeant Tim Lee and Resident Unit Officer Christopher Feigel. On September 20, 2010, Plaintiff's request was granted and his amended complaint was entered (docket #60 and #61).

Plaintiff's amended complaint alleges that on June 27, 2007, which was a Wednesday, Plaintiff asked Resident Unit Officer Warzak if he could have a roll of toilet paper, and Warzak told Plaintiff that he would have to wait until Sunday. Plaintiff states that prisoners in the housing unit were given one roll of toilet paper per week, and that toilet paper was dispensed every Sunday. On June 28, 2007, Plaintiff asked Defendant Dejong for toilet paper, but Defendant Dejong told Plaintiff he would have to wait until Sunday. Plaintiff then wrote a memo to Defendant Belfry complaining about his inability to get toilet paper and explaining that he was on a medication which required him to use toilet paper three times a day. Plaintiff finally obtained toilet paper from a third shift officer approximately 33 hours after his original request.

Plaintiff alleges that on June 29, 2007, he wrote a memo to Defendant Phillipson regarding the issue. On June 30, 2007, Plaintiff filed a grievance on the issue, naming Officers Utterback, Lintula, Arkins, Belfry, Barne, Sharrett, and Ollis. On July 17, 2007, Curt Rife responded to the grievance, stating that when interviewed, Warzak stated that he did not remember the incident and Dejong stated that he was not obligated to give Plaintiff toilet paper until Sunday, and that he had in fact given Plaintiff toilet paper on June 28, 2007.

On August 8, 2007, Plaintiff appealed the grievance to step II because, even though staff knew that he had a medical problem, officers Warzak, Dejong, Barne, and Sharrett continued to refuse Plaintiff more than one roll of toilet paper per week. On August 20, 2007, Defendant Bergh denied Plaintiff's step II appeal, stating that it was unlikely that staff would deny Plaintiff toilet paper for nearly two days. Plaintiff filed a step III appeal.

On October 17, 2007, Defendant Sharrett called Plaintiff a "homosexual dick sucking nigger" and accused Plaintiff of engaging in sexual activity with another prisoner in the school building. Plaintiff filed a grievance on Defendant Sharrett, who later denied making the statement.

2

On October 18, 2007, Defendant Sharrett told Plaintiff that Defendant Belfry wanted to talk to him about the grievance. During the interview, Defendant Sharrett was present, causing Plaintiff to feel intimidated. While still in the presence of Defendant Belfry, Defendant Sharrett told Plaintiff that he had better watch what he was getting himself into. Defendant Belfry did not intervene or reprimand Defendant Sharrett for the comment. Plaintiff filed a grievance regarding this incident. In the step I response, it was noted that the meeting was an "informal" attempt to resolve the issue, so that it was appropriate for Defendant Sharrett to be present. In addition, Defendant Sharrett denied making the threatening comment. In the step III response, it was implied that Defendant Sharrett's presence during the meeting was improper, but no corrective action was taken to resolve Defendant Sharrett's inappropriate behavior or threats toward Plaintiff.

On October 22, 2007, Defendant Sharrett ordered Plaintiff to submit to a search, during Defendant Sharrett grabbed Plaintiff's butt cheeks with both hands and spread them apart. During this action, Defendant Sharrett stated, "How's that feel you little bitch?" Defendant Dejong then approached and called Plaintiff a "little faggot bitch, grievance writing punk mother fucker" and threatened to assault him. Plaintiff filed a grievance regarding the incident. In the step I response, it was noted that Plaintiff had violated the grievance process by failing to attempt resolution of the issue prior to filing the grievance. Plaintiff states that he did not believe such resolution was possible. Defendants Sharrett and Belfry denied the misconduct and Plaintiff's grievance was denied at each level.

On October 23, 2007, Defendant Dejong and Resident Unit Officer Killips refused to let Plaintiff out of his cell for the evening meal. Defendant Dejong claimed that this was because Plaintiff did not have his shirt tucked in, which Plaintiff denies. Moreover, Plaintiff asserts that the denial of a meal for such a minor misconduct violates MDOC policy. Plaintiff file a grievance

3

regarding this issue on October 24, 2007, which was rejected because Plaintiff failed to attempt to resolve the issue with staff prior to filing the grievance. Plaintiff appealed the rejection of the grievance.

On November 2, 2007, Defendant Sharrett searched Plaintiff's cell and confiscated two dictionaries, a Bible, and a broken cup, and wrote Plaintiff a minor misconduct ticket for possession of contraband. The next day, Plaintiff was interviewed by Defendant Belfry in the presence of Defendant Sharrett. Plaintiff states that it was made clear to him that if he did not drop his grievances against Defendant Sharrett, he would receive more misconduct reports. The minor misconduct was dropped and most of Plaintiff's property was returned to him. Plaintiff filed a grievance regarding this issue, asserting staff corruption. On November 5, 2007, Plaintiff wrote a letter to Defendant Phillipson, asserting that he was in fear of retaliation by staff. Plaintiff did not receive a response to this letter.

On November 16, 2007, Defendant Sharrett demanded that Plaintiff submit to a search. Plaintiff complied. During the search, Defendant Sharrett rubbed Plaintiff's chest, legs, and inner and outer thighs in a sexual manner, causing Plaintiff to have an erection. Plaintiff filed a grievance regarding the incident. Later that day, Defendant Sharrett wrote a misconduct on Plaintiff for insolence. Defendant Sharrett claimed that when he came by Plaintiff's cell, Plaintiff had the window covered. Defendant Sharrett tapped on the window several times, causing Plaintiff to uncover the window and yell, "Sharrett you redneck bitch, get away from my door." Plaintiff was found guilty of the misconduct following a hearing on December 3, 2007, and was given 18 days loss of privileges, and was placed in administrative segregation for 60 days. Plaintiff's request for a rehearing was denied on February 6, 2008.

On November 18, 2007, Plaintiff wrote a letter to Defendant Bergh, stating that he feared for his life because of the escalating retaliation by staff, which had been initiated by Defendant Sharrett. On November 19, 2007, Defendant Sharrett claimed that while he was making rounds, Plaintiff was standing in his cell holding two pieces of paper which read, "Sharrett, you & that Bitch Belfry are going to get fucked up. You Bitch Ass Rednecks." Defendant Sharrett wrote Plaintiff a major misconduct ticket for threatening behavior, but did not confiscate the paper. Plaintiff claims that the charges were untrue and that the misconduct was retaliatory. Plaintiff sought to enter the grievances into the misconduct record as exhibits, but Hearing Officer Maki denied his request. On November 20, 2007, Plaintiff wrote a letter of complaint to Defendant Bergh, but received no reply. On November 21, 2007, Plaintiff wrote a grievance against Defendant Sharrett for writing the false misconduct ticket and, on November 30, 2007, he wrote a grievance on Defendant Sharrett for writing false misconduct tickets that caused Plaintiff to be placed in administrative segregation.

On December 4, 2007, Plaintiff was at his door awaiting a showing when Defendant Fiegel closed his window shutter and denied him a shower. Plaintiff filed a grievance on Defendant Fiegel for "constant" sexual harassment on December 6, 2006. Plaintiff claims that Defendants Bergh, Phillipson, Lee, and Belfry had a duty to discipline their subordinates and to protect Plaintiff from their misconduct. Plaintiff seeks compensatory and punitive damages, as well as other unspecified relief.

Presently before the Court is the Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has filed a response and the matter is ready for decision. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to

5

state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355 U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 355 U.S. at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

Initially, the court notes that Plaintiff's amended complaint raises the same factual allegations as those asserted in his original complaint. As background, this court undertakes an initial review of every prisoner case that is filed in the Western District of Michigan. Prior to entering an order for service of process of a summons and complaint, this court determines whether the complaint is frivolous or fails to state a claim upon which relief may be granted. An initial review of the complaint was completed in this case and service of process was ordered on October 8, 2009. If the court felt that the complaint was frivolous or failed to state a claim for relief against any party, that party would have been dismissed from this action and never would have received a summons and complaint. Plaintiff's amended complaint does not raise new allegations, but merely reasserts a

6

portion of the claims that were raised in his original complaint. Moreover, the court would not have granted Plaintiff's motion to file an amended complaint if it was not sufficient to state a claim. Clearly, Plaintiff has presented sufficient allegations to support at least some of the claims asserted in his complaint.

In Plaintiff's amended complaint, he asserts that Defendants violated his "First Amendment Substantive Due Process" rights when they denied him toilet paper and subjected him to sexual harassment. As noted by Defendants, the First Amendment does not have a "Substantive Due Process Clause." Plaintiff presumably is seeking to assert a substantive due process claim pursuant to the Fourteenth Amendment. However, where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (*citing Graham v. Connor*, 490 U.S. 386, 395 (1989)). The court concludes that Plaintiff's claims of sexual harassment and denial of toilet paper, a shower and a meal are best construed as claims for relief under the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food,

medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff alleges that Defendant Dejong denied Plaintiff toilet paper on June 28, 2007, and that Plaintiff was without toilet paper for 33 hours. In addition, Plaintiff asserts that Defendants Sharrett and Dejong, as well as other officers, have continually denied Plaintiff more than one roll of per week despite the fact that Plaintiff is taking a medication which requires him to use toilet paper three times a day. Consequently, Plaintiff asserts that one roll of toilet paper a week is inadequate to meet his needs. The court notes that toilet paper is a basic component of the minimal civilized measure of life's necessities. Therefore, the repeated deprivation of toilet paper implicates the Eighth Amendment.

Plaintiff also claims that Defendant Sharrett called him a "nigger" on one occasion and called him a "faggot" on another occasion. Use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth

8

Amendment prohibits); *Violett v. Reynolds,* No. No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997)(verbal harassment is insufficient to state a claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Sharrett arising from his alleged verbal abuse.

Plaintiff also claims that Defendant Sharrett groped him in a sexual manner during pat down searches on October 22, 2007, and November 16, 2007. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Other courts have held that even minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male

prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

In this case, Plaintiff alleges that on October 22, 2007, Defendant Sharrett ordered Plaintiff to submit to a search, during Defendant Sharrett grabbed Plaintiff's butt cheeks with both hands and spread them apart. During this action, Defendant Sharrett stated, "How's that feel you little bitch?" In addition, Plaintiff states that on November 16, 2007, Defendant Sharrett rubbed Plaintiff's chest, legs, and inner and outer thighs in a sexual manner during a pat down search, causing Plaintiff to have an erection. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the

unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Other courts have held that even minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment);

*Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

The court concludes that if true, Defendant Sharrett's conduct toward Plaintiff was reprehensible, but it does not rise to the level of an Eighth Amendment violation. According to Plaintiff, there were two incidents, on October 22, 2007, and November 16, 2007, where Defendant Sharrett touched him inappropriately while conducting pat-down searches. As noted above, minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. Moreover, Plaintiff does not suggest in his complaint that he was subjected to any physical injury whatsoever as a result of the search. Rather, Plaintiff claims mental or emotional injury as a result of the incident. Title 42 U.S.C. § 1997e(e) precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Sixth Circuit repeatedly has held that Eighth Amendment claims for monetary relief based on mental or emotional injury are precluded by § 1997e(e) absent a showing of physical injury. *See, e.g., Jackson v. Herrington*, 393 F. App'x 348, 354 (6th Cir.2010); *Harden–Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir.2008). Therefore, Plaintiff's allegations of sexual harassment fail to state an Eighth Amendment claim against Defendant Sharrett.

Finally, Plaintiff alleges that he was denied one meal by Defendant Dejong, and one shower by Defendant Feigel. Allegations regarding temporary inconveniences, e..g, being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that

the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F.Supp.2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)); *but see Flanory v. Bonn*, 604 F.3d 249, 255-56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim). The court concludes that the one-time denial of a meal by Defendant Dejong and of a shower by Defendant Feigel are insufficient to state a claim under the Eighth Amendment. *See Hartsfield v. Vidor,* 199 F.3d 305, 310 (6th Cir. 1999) (stating that "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment") (citing *Stephens v. Carter County Jail*, 816 F.2d 682 (6th Cir.1987)).

In his amended complaint, Plaintiff claims that he received false misconduct tickets and was subjected to mistreatment in retaliation for filing grievances. Plaintiff states that on October 17, 2007, he filed a grievance on Defendant Sharrett, and that on October 18, 2007, Defendant Sharrett told Plaintiff that Defendant Belfry wanted to talk to him about the grievance. During the interview, Defendant Sharrett was present, causing Plaintiff to feel intimidated. While still in the presence of Defendant Belfry, Defendant Sharrett told Plaintiff that he had better watch what he was getting himself into. On October 22, 2007, Defendant Dejong approached and called Plaintiff a "little faggot bitch, grievance writing punk mother fucker" and threatened to assault him. On October 23, 2007, Defendant Dejong refused to let Plaintiff out of his cell for the evening meal. Defendant Dejong claimed that this was because Plaintiff did not have his shirt tucked in, which Plaintiff denies. Plaintiff file a grievance regarding this issue on October 24, 2007, which was rejected because

14

Plaintiff failed to attempt to resolve the issue with staff prior to filing the grievance. On November 2, 2007, Defendant Sharrett searched his cell and confiscated two dictionaries, a Bible, and a broken cup, and wrote Plaintiff a minor misconduct ticket. Plaintiff was called to Defendant Belfry's office on November 3, 2007, and Defendants Belfry and Sharrett made it clear that if he did not drop his grievances against Defendant Sharrett, he would receive additional misconducts. Plaintiff states the minor misconduct was dropped and most of his property was returned. Plaintiff continued to write grievances and on November 17, 2007, Plaintiff received a falsified major misconduct ticket written by Defendant Sharrett. Plaintiff wrote additional grievances and on November 19, 2007, Defendant Sharrett wrote another major misconduct on Plaintiff. On November 30, 2007, Plaintiff wrote a grievance on Defendant Sharrett for writing false misconduct tickets that caused Plaintiff to be placed in administrative segregation and on December 4, 2007, Plaintiff was at his door awaiting a showing when Defendant Fiegel closed his window shutter and denied him a shower. Plaintiff claims that each of the Defendants retaliated against him for his use of the grievance system.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

In this case, Plaintiff alleges temporal proximity between the conduct of Defendants Sharrett, Dejong, and Fiegel and Plaintiff's use of the grievance system. Moreover, Plaintiff also alleges that Defendants Sharrett and Dejong made specific comments indicating that they wished to punish him for using the grievance system, and that Defendant Belfry was part of a discussion between Plaintiff, Sharrett and Belfry during which Plaintiff was made to understand that if he did not cease filing grievances, he would be receive additional misconduct tickets. The court concludes that these allegations are sufficient to state a retaliation claim.

Defendants Bergh, Lee, Belfry and Phillipson contend that they should be dismissed for lack of personal involvement. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly

16

unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

As noted above, Plaintiff makes specific allegations with regard to Defendant Belfry. Therefore, Defendant Belfry is not entitled to dismissal for lack of personal involvement. However, Plaintiff has not alleged facts establishing that Defendants Bergh, Lee, and Phillipson were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Bergh, Lee, and Phillipson had in this action involve the denial of administrative grievances or the failure to act. Defendants Bergh, Lee, and Phillipson cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Bergh, Lee, and Phillipson are properly dismissed for lack of personal involvement.

As noted above, the court concludes that Plaintiff's Eighth Amendment claims against Defendant Sharrett for using racial slurs and touching him inappropriately during a pat down search fail to state a claim, as do Plaintiff's Eighth Amendment claims against Defendant Dejong and Feigel for the denial of a single meal and of a shower. The court further notes that Defendants Bergh, Lee, and Phillipson are entitled to dismissal for lack of personal involvement. However, for the reasons stated by the court, Plaintiff's Eighth Amendment claims against Defendants Sharrett and Dejong for repeatedly denying Plaintiff toilet paper are non-frivolous and state a claim, as do Plaintiff's retaliation claims against Defendants Sharrett, Dejong, Fiegel and Belfry. Therefore, Defendants Sharrett, Dejong, Fiegel and Belfry are not entitled to dismissal on these claims.

In light of the foregoing, Defendants' motion to dismiss (docket #62) will be DENIED, in part, and GRANTED, in part.

An Order consistent with this Opinion will be entered.

Dated: September 7, 2011  /s/ Robert Holmes Bell  
                                                          ROBERT HOLMES BELL  
                                                          UNITED STATES DISTRICT JUDGE